**JACKSONWHITE**
ATTORNEYS AT LAW
*A Professional Corporation*

40 North Center Street, Suite 200
Mesa, Arizona   85201
Telephone No.:       (480) 464-1111
Facsimile No.:        (480) 464-5692
Email:           centraldocket@jacksonwhitelaw.com
*Attorneys for Plaintiffs*
By:     Nathaniel J. Hill, SBN 028151
        Email:        nhill@jacksonwhitelaw.com

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| Sondra Matthews, a single woman,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>The City of San Luis,<br><br>　　　　　Defendant. | Case No.:<br><br>**COMPLAINT**<br><br>(Violation of A.R.S. § 23-1501; Wrongful Termination in Violation of A.R.S. § 36-2813; Violation of 42 U.S.C. § 1981; Violation of 42 U.S.C. § 1983)<br><br>(*Jury Trial Requested*) |

　　　　Plaintiff, Sondra Matthews, by and through her counsel undersigned, and for her Complaint, alleges as follows:

## INTRODUCTION

　　　　1.　　Plaintiff is an African American/Hispanic female.  Plaintiff was formerly employed by the City of San Luis.

　　　　2.　　Plaintiff performed her job duties with the City of San Luis at or above satisfactory levels.

　　　　3.　　Despite acceptably performing her job, Plaintiff was subjected to discriminatory animus and a hostile work environment, and other illegal acts of

discrimination, based on her race, and was subjected to retaliation for engaging in protected activity.

## I. NATURE OF CLAIM

4. This is a proceeding for injunctive relief and damages against Defendant to redress the deprivation of rights secured to Plaintiff by 42 U.S.C. § 1981 and 42 U.S.C. § 1983.

## II. JURISDICTION

5. The events giving rise to these causes of action occurred in Yuma County, Arizona within the jurisdiction of this Court.

6. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 1983. Supplemental jurisdiction over Plaintiff's state law claims is invoked by 28 U.S.C. § 1367(a).

## III. VENUE

7. Based on 28 U.S.C. § 1391, 42 U.S.C. § 1981, 42 U.S.C. § 1983, and 28 U.S.C. § 1367(a), venue is proper because the acts detailed in this Complaint occurred within the State of Arizona and the jurisdiction of this Court.

## IV. PARTIES

8. Plaintiff began working as the Director of Human Resources for the City of San Luis on June 29, 2020. Her employment was unfairly and wrongfully terminated on December 30, 2020.

9. Plaintiff is, and at all times relevant to this action has been, a resident of Arizona residing in Yuma County, Arizona.

10. The City of San Luis is a city located in Yuma County, Arizona, organized and operating under the color of state law as a political subdivision of the State of Arizona pursuant to Title 9 of the Arizona Revised Statutes.

11. Defendant City of San Luis is a public municipality and governmental entity that acts through its employees, agents, and legally recognized departments.

## V. FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

**A. Defendant City of San Luis subjected Plaintiff to race discrimination, a hostile work environment, and retaliation.**

12. Plaintiff is a Human Resources Professional who began working as the Director of Human Resources for the City of San Luis on June 29, 2020.

13. Plaintiff was hired after an extensive search and interview process. Plaintiff was initially contacted by a professional recruiter about this opportunity. She was selected as one out of over 100 candidates who had applied for this position. Plaintiff was thoroughly vetted, submitted to various tests and interviews, and was ultimately selected for the position.

14. Plaintiff should have successfully completed her probationary period and become a classified employee for the City of San Luis on December 29, 2020; however, due to the actions described in this Complaint, her probationary period was extended until June 29, 2021. Plaintiff's employment was unfairly and wrongfully terminated on December 30, 2020.

15. Prior to working for the City of San Luis, Plaintiff, worked as a Human Resources Analyst for the City of Yuma. Plaintiff has approximately eight years of experience working in the Human Resources industry. All of her experience has been in the public sector working for the Western AZ Council of Governments, Yuma County, The City of Yuma, and the City of San Luis.

16. Plaintiff has an Associate of Arts degree in Psychology/Sociology from Arizona Western College and a Bachelor of Science degree in Psychological Science from Northern Arizona University. She is also a member of the Society for Human Resource Management (SHRM) and has received her Senior Certified Professional credential from SHRM.

17. Some of Plaintiff's job duties/responsibilities as Director of Human Resources included, but were not limited to: meeting with other department directors to

answer their questions, assisting with employee issues, creating policies and operating procedures for the City of San Luis, and organizing and clarifying roles of the HR team.

18. Plaintiff was fully qualified for her position as Director of Human Resources for the City of San Luis.

19. During her employment, Plaintiff was the only African American employee of the City of San Luis and she was subjected to disparate and discriminatory treatment based on her race by her non-African American supervisor, Tadeo De La Hoya, City Administrator.

20. As an example of the disparate and discriminatory treatment based on her race to which Plaintiff was subjected, Mr. De La Hoya questioned Plaintiff regarding the interview panel she had formed for an accounting specialist position. Plaintiff explained that she had made an exception to the usual interview panel based on the request of the Finance Director. Mr. De La Hoya was visibly unhappy about this decision and left to walk over to the finance director's office. Plaintiff wanted to clarify what had occurred, that she was not blaming the Finance Director for her decision, and followed Mr. De La Hoya to the Finance Director's office. The following day, Mr. De La Hoya told Plaintiff that she was acting like his mom by following him to the finance office.

21. On September 22, 2020, Plaintiff posted a new job opening in the Human Resources Department. The position was closed two weeks later on October 6, 2020. Human Resources received 68 applications in response to this job posting. After review of all the applications, Human Resources located the 10 best qualified applicants for the position. Of these qualified candidates, seven were then invited to interview for the position. All of the interviews were held on October 27, 2020. Only six of the seven applicants were interviewed because one of the applicants was not able to attend the interviews on that date. Following the interviews, based on the scores of the interviews, a conditional job offer was made to the top candidate.

22. In accordance with the City of San Luis' policies, Human Resources next started the new hire process, which included, among other things, background and

reference checks and a pre-employment drug test. The drug test results were positive for THC/Cannabis (marijuana). When informed of the positive drug test results, the candidate presented Human Resources with a medical marijuana card.

23. Plaintiff contacted legal counsel for the City of San Luis. Based on that conversation, and without revealing the substance of that conversation, Plaintiff understood that she needed to follow Arizona's medical marijuana statute, A.R.S. § 36-2813. Under that statute, it is illegal to discriminate against an individual because they are a medical marijuana cardholder or because of a positive drug test, unless the individual used, possessed, or was impaired by marijuana at work.

24. A.R.S. § 36-2813 states, in pertinent part:

> B. Unless a failure to do so would cause an employer to lose a monetary or licensing related benefit under federal law or regulations, an employer may not discriminate against a person in hiring, termination or imposing any term or condition of employment or otherwise penalize a person based upon either:
>
>   1. The person's status as a cardholder.
>
>   2. A registered qualifying patient's positive drug test for marijuana components or metabolites, unless the patient used, possessed or was impaired by marijuana on the premises of the place of employment or during the hours of employment.

25. Relying on the legal requirements of A.R.S. § 36-2813 and the results of the candidate's background and reference checks, Plaintiff moved forward with the hiring of the candidate and with a start date of employment of November 23, 2020.

26. On December 1, 2020, a little over a week after this individual began his employment, the Mayor of the City of San Luis, Gerardo Sanchez, received an email from a citizen stating, in pertinent part:

> Mayor Sanchez, …. I just wanted to let you know that I'm disappointed that the city of San Luis would hire someone that uses marijuana in its HR department over other candidates. How will this employee be able [t]o enforce policy on other employees, when himself uses marijuana? What will your citizens and employees think?
>
> While the use of medical and recreational marijuana has been approved in the state, why will you hire an individual that uses it for your own HR department?

This is very disappointing

28. The following day, December 2, 2020, Mayor Sanchez forwarded this email to City Administrator, Tadeo De La Hoya, asking him to "please look into this." Mr. De La Hoya sent the email to Plaintiff that same day, stating in pertinent part:

> Please read the email concern/complaint below. I assured Mayor Sanchez that you wouldn't dare. However, recently we had Joseph coming/leaving, and I'm not sure if I missed something there while Edgardo was in charge or something was not reported to me then.

28. Plaintiff responded to Mr. De La Hoya by email that same day that she would look into the issues and get back to him as soon as possible.

29. The following day, December 3, 2020, Mr. De La Hoya met with Plaintiff. During their meeting, Mr. De La Hoya asked Plaintiff about the recent HR hire. Plaintiff confirmed that the HR Department had recently hired a new staff member who tested positive for marijuana, but the individual had presented HR with a medical marijuana card.

30. Plaintiff told Mr. De La Hoya that after receipt of the positive drug test and presentation of the medical marijuana card, she contacted one of the Attorneys for the City of San Luis, and received guidance on the decision. Without revealing the substance of that conversation with the City's attorney, Plaintiff advised Mr. De La Hoya that she believed it would be a violation of Arizona statute to discriminate against a new employee who was a medical marijuana cardholder who tested positive for marijuana.

31. Plaintiff further explained to Mr. De La Hoya that it was against Arizona law to rescind an offer of employment because of a positive drug test if the individual had a medical marijuana card.

32. On December 10, 2020, Plaintiff again spoke to the City of San Luis' employment law counsel on another HR/personnel matter. Without revealing the substance of those conversations, Plaintiff decided to respond in writing to Mr. De La Hoya's December 2, 2020 email and advise Mr. De La Hoya against taking any adverse employment action against the employee—which would be a violation of Arizona statutes.

33. In her email to Mr. De La Hoya, Plaintiff described the hiring of the new HR employee, her contacts with legal counsel, and legal counsel's advice. Mr. De La Hoya responded to Plaintiff's email asking her how he should respond to the Mayor's email (regarding the citizen complaint), how the Mayor should respond to the citizen complaint, and how he should respond to the media. Plaintiff responded to Mr. De La Hoya that she had forwarded the citizen complaint email to legal counsel and she would follow up with him (legal counsel) on Monday for further advice, she had drafted a potential response for Mr. De La Hoya to send to the Mayor which she had also sent to the City of San Luis' legal counsel for review, and she would get back to him (Mr. De La Hoya) concerning his question regarding the media.

34. On December 14, 2020, Plaintiff again emailed the City of San Luis' employment law counsel on this issue, forwarded the emails to Mr. De La Hoya, and Mr. De La Hoya responded to the City of San Luis' employment law counsel.

35. That same day, December 14, 2020, Mr. De La Hoya, gave Plaintiff a Memorandum re: "extension of probation", extending Plaintiff's probation for six months. The Memorandum states, in part,

> … based on the following Human Resources Policies:
>
> 1. HR-2-09 Probation
> 2. City Code 31.20 ¶ 5
>
> I am extending your probation for six (6) months as allowed by policy. Your original probation is set to expire on December 29, 2020. The new date of the end of your original probation will be June 29, 2021. It has been great working with you [s]ince June 29, 2020, when you were hired. However, I will need the extra time to evaluate if you are a good permanent fit for the City of San Luis.
>
> Let me know if you have any questions. Thank you.

36. HR-2-09 Probation, states, in part:

A. Types of probation. *Original probation, disciplinary and promotional probation* are the only types of probation.

B. Original probation.

> 1. Duration. The original probationary period is 6 months of actual City service for most City positions. All police and fire positions require a 1-year probationary period of actual City service. Probationary periods may be extended as stated in (B)(2) of this section.
>
> 2. Extensions.
>
>    a. A Department Head may extend an original probation for up to an additional 6 months for employment-related reasons.

37. At the time Mr. De La Hoya gave Plaintiff this Memorandum re: "extension of probation", Plaintiff asked Mr. De La Hoya for examples of why her probation was being extended to help her understand the behaviors she needed to change to successfully pass probation. Mr. De La Hoya responded that he could not think of anything off the top of his head and that he would need to look at his notes. Mr. De La Hoya never reported back to Plaintiff what she needed to change to pass probation.

38. Upon information and belief, Plaintiff was being retaliated against for insisting that the City of San Luis follow Arizona statutes by Mr. De La Hoya unilaterally extending her probationary period.

39. On December 28, 2020, two weeks after he extended her probationary period, Mr. De La Hoya told Plaintiff that he intended to terminate her employment or she could resign her employment rather than be terminated. Plaintiff repeatedly asked for a reason why her employment was being terminated. Mr. De La Hoya responded each time that he did not think it was going to work out, but refused to give a specific reason for terminating her employment. Finally, Mr. De La Hoya told Plaintiff that she was on probation so he did not need a reason to terminate her. Mr. De La Hoya gave Plaintiff until December 30, 2020 to decide if she wanted to resign her employment or be terminated.

40. On December 30, 2020, Plaintiff sent Mr. De La Hoya an email, which was also copied to Matias Rosales, Vice Mayor of the City of San Luis, stating that she would not resign her employment because she was fully qualified and capable of performing her job.

41. Plaintiff's December 30, 2020 email to Mr. De La Hoya further stated that she believed she was being retaliated against for refusing to violate an employee's right to privacy regarding medical records. Plaintiff's email stated that Mr. De La Hoya had repeatedly expressed anger and disappointment to her because she did not disclose to him that an applicant had a positive drug test and that immediately after finding out about the positive drug test he had notified her he was extending her probationary period an additional six months. Plaintiff stated that "[d]isclosing that information to you or failing to hire that employee simply because of their status as a medical marijuana cardholder would have violated the law. I refuse to violate any laws in my role."

42. Plaintiff's email also complained that Mr. De La Hoya's adverse employment actions of arbitrarily extending her probationary period and threatening to terminate her employment violated Title VII of the Civil Rights Act of 1964 due to her race.

43. Minutes later, Mr. De La Hoya responded to Plaintiff's email attaching a Memorandum re: "End of probation period" immediately terminating her employment. Mr. De La Hoya's email, which was also copied to Mr. Rosales, Vice Mayor, Edgardo Carbajal, Senior HR Analyst, and Justin Pierce, an attorney for the City, further stated that Vice Mayor Rosales should not be copied on any future communications because the "City Council does not get involved in daily operations." Mr. De La Hoya's Memorandum to Plaintiff states, in part:

> On a memorandum dated December 14, 2020, I gave you a memo extending your original probation because I needed more time to evaluate your performance to see if you should become a permanent employee. I have considered your performance over the last few months as per our conversation on Monday, December 28, 2020. I believe you have not demonstrated that you will demonstrate the skill sets and personality fit to be a permanent employee in a city's director-level position. You will not be passing your original probationary period. Therefore, your last day of employment with the City of San Luis is December 30, 2020, as per your one-day extension request I granted you during our conversation Monday.

44. The treatment of Plaintiff stands in stark contrast to the City of San Luis' treatment of similarly situated employees, e.g., a Hispanic male Director. This comparator

was never disciplined or terminated despite being frequently absent from the office, unresponsive to emails from his peers and colleagues, and having a complaint made against him by a contractor during a City Council meeting.  Additionally, Mr. De La Hoya nominated this comparator for Employee of the Quarter, an organizational award, despite a clear history of negative behaviors.

45. Plaintiff did not have any disciplinary or performance problems prior to her termination.

46. On July 13, 2021, Plaintiff filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") against the City of San Luis alleging race and sex discrimination, a hostile work environment, and retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended.

**COUNT I**

**(Violation of 42 U.S.C. § 1983)**

47. All previous paragraphs of this Complaint are realleged as if set forth more fully herein.

48. Federal statute 42 U.S.C. § 1983 provides in pertinent part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

49. Based on the actions described herein, the City of San Luis and its employees and agents are liable for violations of 42 U.S.C. § 1983.

50. As described herein, the City of San Luis acted under the color of state law to deprive Plaintiff of her substantive and procedural due process rights and her property interest in her employment.  The City of San Luis deprived Plaintiff of these rights by purposely extending her original probation period without cause, terminating her employment while she was still on probation, and not providing adequate procedural due

process safeguards relating to terminating employees on probation. The City of San Luis provided no opportunity for appealing a termination while on probation. Likewise, the City of San Luis provided no opportunity for a pre-termination hearing or a post-termination hearing before an appeals board.

51. Plaintiff has suffered humiliation and degradation, pain and suffering, economic loss, and violations of her rights due to the unconstitutional and illegal practices of the City of San Luis.

52. Under 42 U.S.C. § 1983, the City of San Luis is liable to Plaintiff for the violations of her constitutional and statutory rights and privileges described herein, entitling Plaintiff to recover damages and to all other rights, remedies, in law or in equity, available to her under 42 U.S.C. § 1983 or other applicable statutes.

53. Plaintiff is also entitled to recover her reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988 and all other applicable statutes.

**COUNT II**

**(Wrongful Termination in Violation of A.R.S. § 23-1501(3)(c)(ii))**

54. All previous paragraphs of this Complaint are realleged as if set forth more fully herein.

55. Arizona Revised Statutes § 23-1501(3)(c)(ii) prohibits an employer from discharging an employee for whistleblowing activities.

56. In compliance with A.R.S. § 23-1501(3)(c)(ii), Plaintiff disclosed in a reasonable manner that she had information or a reasonable belief that the City of San Luis or an employee of the City of San Luis, had violated, was violating, or would violate a statute of the State of Arizona to either the City of San Luis or a representative of the City of San Luis who Plaintiff reasonably believed was in a managerial or supervisory position and with the authority to investigate and take action to prevent further violations.

57. Plaintiff reported her belief that she had to follow Arizona's medical marijuana statute, A.R.S. § 36-2813, regarding the hire of an individual who was a medical

marijuana cardholder. Plaintiff reasonably believed that Mr. De La Hoya had the ability to address and resolve her concerns.

58. Plaintiff was terminated in whole or in part because of her whistleblowing activities.

59. As a direct and proximate result of the City of San Luis' conduct, Plaintiff has suffered humiliation and degradation, pain and suffering, severe mental anguish and distress, has been wrongfully discharged, and consequently has suffered a loss of income in the form of past, present, and future wages, along with employment benefits, prospective retirement benefits, seniority, Social Security benefits, and other monetary and non-monetary benefits due her.

60. Plaintiff seeks, as a result of her wrongful termination, compensatory damages incurred or to be incurred by her in an amount to be determined at trial.

61. Upon information and belief, the City of San Luis acted with an evil mind and intentionally caused damages to Plaintiff or acted with a conscious disregard of a substantial risk of harm that would result to Plaintiff as a result of its actions, permitting Plaintiff to recover punitive damages against the City of San Luis.

62. Because this claim arises from an employment contractual relationship, Plaintiff is entitled to recover her reasonable attorneys' fees pursuant to A.R.S. § 12-341.01(A).

## COUNT III

**(Wrongful Termination in Violation of A.R.S. § 36-2813)**

63. All previous paragraphs of this Complaint are realleged as if set forth more fully herein.

64. Arizona Revised Statutes § 36-2813 prohibits an employer from discriminating against a person in hiring, termination, or otherwise penalizing a person because they are a medical marijuana cardholder or because of a positive drug test, unless the individual used, possessed, or was impaired by marijuana at work.

65. As Director of Human Resources and in compliance with guidance from legal counsel and A.R.S. § 36-2813, Plaintiff hired an individual with a valid medical marijuana card.

66. Following hiring this individual, Plaintiff was retaliated against.

67. Plaintiff should have successfully completed her probationary period and become a classified employee for the City of San Luis on December 29, 2020; however, on December 14, 2020, Plaintiff's probation was extended by her supervisor for six months. Plaintiff was given no reason for extending her probation.

68. On December 30, 2020, Plaintiff's employment was unfairly and wrongfully terminated.

69. Plaintiff was terminated in whole or in part because of hiring an individual who has a valid medical marijuana card.

70. As a direct and proximate result of the City of San Luis' conduct, Plaintiff has suffered humiliation and degradation, pain and suffering, severe mental anguish and distress, has been wrongfully discharged, and consequently has suffered a loss of income in the form of past, present, and future wages, along with employment benefits, prospective retirement benefits, seniority, Social Security benefits, and other monetary and non-monetary benefits due her.

71. Plaintiff seeks, as a result of her wrongful termination, compensatory damages incurred or to be incurred by her in an amount to be determined at trial.

72. Upon information and belief, the City of San Luis acted with an evil mind and intentionally caused damages to Plaintiff or acted with a conscious disregard of a substantial risk of harm that would result to Plaintiff as a result of its actions, permitting Plaintiff to recover punitive damages against the City of San Luis.

73. Because this claim arises from an employment contractual relationship, Plaintiff is entitled to recover her reasonable attorneys' fees pursuant to A.R.S. § 12-341.01(A).

## COUNT IV

### (Violation of 42 U.S.C. § 1981)

74. All previous paragraphs of this Complaint are realleged as if set forth more fully herein.

75. Originally enacted under the Civil Rights Act of 1866, 42 U.S.C.A.§1981(a) enforced the Thirteenth Amendment which gave Congress the authority to enforce "by appropriate legislation."  As noted by the U.S. Supreme Court in *Jones v Alfred H. Mayer Co.,* 392 U.S. 409, 440 (1968), Section 2 of the Thirteenth Amendment provided Congress the power "to determine what are the badges and incidents of slavery, and the authority to translate that determination into effective legislation."

76. Under 42 U.S.C. § 1981, all persons, within the jurisdiction of the United States, regardless of race, shall have the same right in every state to make and enforce contracts and enjoy all benefits, privileges, terms, and conditions of the contractual relationship.

77. As more fully described above, the City of San Luis was aware of and subjected the Plaintiff to a hostile work environment and intentionally discriminated against her on the basis of her race and retaliated against her for complaining about and opposing racial discrimination in the workplace.  The hostile work environment was unwelcome, was motivated by race, and the conduct was so severe or pervasive that a reasonable person in Plaintiff's position would find the work environment to be hostile or abusive.  Plaintiff also believed her work environment to be hostile or abusive.

78. The City of San Luis' discriminatory and retaliatory actions were directed to impinge Plaintiff's right to make and maintain her contractual employment relationship with the City of San Luis.

79. To the extent the City of San Luis has validly adopted lawful policies proscribing racial discrimination and retaliation, the City of San Luis has fundamentally failed to implement such policies by not adequately training its employees.  The City of San Luis' abject failure to train its employees against discrimination and retaliation on the

basis of race evidences deliberate indifference to the constitutionally and statutorily protected rights of its African American employees. This shortcoming constitutes a policy or custom actionable under §1981.

80. In the alternative, the decision makers as described herein possessed final authority to establish the liability of the City of San Luis with respect to the action ordered.

81. As a result of the City of San Luis' actions, Plaintiff has sustained damages and is entitled to recover back pay, reinstatement, or in lieu of reinstatement, front pay and compensatory damages for pain and suffering and emotional distress.

82. Plaintiff is also entitled to recover her reasonable attorneys' fees and costs under 42 U.S.C. § 1988.

**WHEREFORE,** Plaintiff requests that this court enter judgment in her favor and against the Defendant as follows:

A. Declare that the employment practices complained of in this Complaint are unlawful and that they violate 42 U.S.C. § 1983, 42 U.S.C. § 1981, A.R.S. § 23-1501(3)(c)(ii), and A.R.S. § 36-2813;

B. Order Defendant to pay Plaintiff's actual damages in an amount to be proven at trial;

C. Order Defendant to pay Plaintiff her economic and non-economic damages and losses including lost wages, back pay, front pay, and other monetary and non-monetary benefits, all amounts to be proven at trial;

D. Order Defendant to pay Plaintiff's general and compensatory damages for her economic losses, pain and suffering, emotional distress, harm to reputation and loss of earning capacity, and all special damages or financial losses that Plaintiff has suffered in an amount to be proven at trial;

E. Award Plaintiff prejudgment interest from the date each claim for damages was liquidated;

F.   Award Plaintiff prejudgment interest on all liquidated sums and interest on all sums awarded in judgment at the highest legal rate allowable from the date of judgment until paid;

G.   Award Plaintiff interest on all sums awarded in judgment at the highest legal rate allowable from the date of judgment until paid;

H.   Order Defendant to pay Plaintiff's court costs, expenses, and reasonable attorneys' fees in connection with this action pursuant to all applicable federal and state statutes;

I.   For Plaintiff's continuing costs in this matter; and

J.   For such other and further relief as this court deems just and proper under the circumstances.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby demands a jury trial.

**DATED** this 21st day of December, 2021.

### JACKSON WHITE

s/ Nathaniel J. Hill
By:   Nathaniel J. Hill, SBN 028151
40 North Center Street, Suite 200
Mesa, Arizona   85201
*Attorneys for Plaintiff*

F:\MNO\Matthews, Sondra\Pleadings\Complaint.V1.docx